**UNITED STATES of America**

v.

**James J. BULGER.**

**Criminal Action No. 99–10371–RGS.**

United States District Court,
D. Massachusetts.

Nov. 9, 2012.

Brian T. Kelly, Fred M. Wyshak, Jr., Mark T. Quinlivan, Zachary R. Hafer, United States Attorney's Office MA, Boston, MA, for Plaintiff.

Henry B. Brennan, J. W. Carney, Jr., Carney & Bassil, Boston, MA, for Defendant.

## MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO CONTINUE TRIAL

STEARNS, District Judge.

Defendant James Bulger was a fugitive from justice for sixteen years. The racketeering enterprise, which was at the heart of the nineteen alleged murders pending before this court, did not flee. Over the years, in this session and in parallel proceedings in other sessions, a succession of prosecutions unfolded involving Bulger's former associates, among them Stephen Flemmi, Michael Flemmi, Kevin Weeks, Kevin O'Neil, Frances Salemme, James Martorano, John Martorano, Robert DeLuca Sr., and John Connolly. The complexity of the case, the multiplicity of defendants, the uncovering of a corrupt relationship between Bulger and rogue agents of the Federal Bureau of Investigation, as well as a number of related civil cases, have resulted in an accumulation of evidence, some directly related to the pending murder cases, some seemingly tangential, but all of which counsel is required to review for its potential relevance to the defense.

Sixteen months have now elapsed since Bulger's capture. On June 25, 2012, Magistrate Judge Marianne Bowler, to whom pre-trial matters had been drawn, set a trial date of March 4, 2013, in consultation with this judge.[1] Now pending before this court is defendant's motion seeking anew to continue the trial date to November 4,

---

1. Magistrate Judge Bowler had on February 13, 2012, set an original trial date of Novem-

2013.[2] In the pleading, defendant's counsel states that he needs the additional time to "review all of the discovery, file and litigate substantive motions, and adequately prepare for trial."[3] Def.'s Mem. at 6. Counsel blames his inability to meet the March 4, 2013 trial date on the "shameful discovery production by the government," and on the court for, among other things, refusing to authorize funds for the hiring of six contract attorneys to assist him in preparing the defense. I will address each of these complaints.

With respect to the discovery produced by the government, counsel states that it is "completely and totally unorganized," excessively duplicated, overly redacted, and in many cases randomly or capriciously designated as falling under the aegis of the Protective Order entered on August 9, 2011, and modified by Magistrate Judge Bowler on July 17, 2012.[4] The government responds by blaming counsel's alleged indolence for his inability to digest the discovery material that the government has provided. Government counsel argue that the Protective Order was one that defendant's counsel had initially agreed to and that in designating documents as protected, it used the categories and procedures ordered by Magistrate Judge Bowler.[5] With respect to the discovery material, while the government does not dispute its extent, it notes that it has produced to defendant's counsel in a CD-searchable format, an evidence chart listing the witnesses and the associated exhibits that it plans to offer at trial, as well as all exculpatory material it has in its possession relating to each of these witnesses.[6] And finally, the government states that while the actual trial exhibits in six of nineteen civil cases have not been produced (because they are not in the government's possession), the government has provided all of the exhibits used during the related civil depositions (along with the trial and deposition transcripts), which the government believes are identical to those used in the cases that went to trial.

This is not the first time that defendant's counsel has aired complaints regarding the discovery process. These complaints have been the subject of numerous hearings, rulings, and comments by Magistrate Judge Bowler.[7] Rather

---

ber 5, 2012. Bulger asked for a continuance of the trial date until November 4, 2013, which Magistrate Judge Bowler allowed in part—postponing the trial until March of 2013.

2. The suggestion in defendant's supporting memorandum, which has been repeated by counsel elsewhere, that the March 2013 date was selected "arbitrarily" by the court is not accurate. The March date was chosen on the basis of counsel's representation in his "Memorandum Regarding Estimated Time Required to Review and Analyze Discovery" filed on February 13, 2012, that one year would be required to complete the task of reviewing and analyzing the discovery.

3. As will be explained, defendant has since stated that he will not file case-dispositive motions, which typically take a court a considerable amount of time to resolve, thereby delaying the trial.

4. While the general theme is that the government has produced too much discovery, counsel also complains that he has been able to obtain or identify the trial exhibits in only two of the eight related civil cases that have proceeded to trial.

5. Moreover, the government states (accurately) that defendant's counsel has failed to avail himself of the mechanism established by the Protective Order for obtaining the "declassification" by the court of documents designated by the government as protected.

6. In the court's experience, this is a nearly unprecedented gesture by the government, one that is not required by the Federal Rules of Criminal Procedure or the Jencks Act.

7. The court would be remiss in not recognizing Magistrate Judge Bowler for her effective stewardship of the preliminary phases of the

than attempting to arbitrate every dispute, the court believes the more productive course is to identify the outstanding discovery issues that are material and to craft a schedule that will insure their resolution in advance of an immovable trial date.

The complaints defendant's counsel make about the court warrant a brief formal response—brief because the substance of several of the issues raised by counsel were brought to the court (as is proper) by way of ex parte motions. Consequently, I will comment only to the extent that defendant's counsel in his pleadings has chosen to reveal their content. It is true that on February 16, 2012, the court refused funds requested by counsel to hire six contract attorneys to assist in the defense. The court had, however, on January 18, 2012, authorized funding to permit three associates in counsel's law firm, specifically Richard Gedeon, Kathryn Barnwell, and John Oh, to work without limitation on the case under the supervision of Attorney Carney and his associate lead counsel, Hank Brennan. A complement of five attorneys is, in the court's experience, adequate to handle a case even of this magnitude. In its February 16, 2012 order, the court also stated that it would look favorably on a request for payment for any paralegal services required to perform tasks related to the organization of the discovery material. The court additionally had earlier authorized the expenditure of

$40,000 (the full amount requested) to pay for an outside computer firm to provide document management and retrieval services to assist defense counsel.[8] The court declined to appropriate $210,000 to transcribe audio cassette tape recordings, but stated that it would provide funds for the transcription of any such recording for which "some showing of need or relevance is made." In sum, the court has been open to provide whatever public funds are reasonably needed to insure, as the Criminal Justice Act, 18 U.S.C. § 3006A(e)(1) provides, for a defense comparable to that available to a privately-paying litigant. The court does not have the authority or inclination, however, to issue a blank check.

 As a general rule of law, the matter of a trial continuance is committed to the discretion of the trial judge. As the First Circuit has observed, "[t]rial management is peculiarly within the ken of the district court. That court has great latitude in managing its docket, including broad discretion to grant or withhold continuances. Only 'an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay' constitutes an abuse of that discretion." *United States v. Saccoccia*, 58 F.3d 754, 770 (1st Cir.1995) (footnote omitted), citing *Morris v. Slappy*, 461 U.S. 1, 11–12, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983). Among

---

case. She has brought order to what at times has been an overly contentious process. As counsel for the parties acknowledged at the July 17, 2012 status conference, her intervention has effectively promoted the orderly compliance by the government with its discovery obligations. Having thoroughly reviewed the record, I agree with Magistrate Judge Bowler's observation at the September 7, 2012 status conference that the government has gone beyond the requirements of the rules of criminal procedure in complying with her discovery orders and has provided defendant's counsel with virtually everything that

he has asked for. I also agree that there is a point at which the burden of preparing a defense becomes the responsibility of defendant's counsel and not the government. Sept. 7, 2012 Tr. at 12.

**8.** It is true that a motion filed on May 29, 2012, for funds to hire private investigators was misplaced and not acted upon until September 4, 2012, when it was allowed by the court. It should be noted that defendant's counsel did nothing in the interim to bring the absence of a ruling to the court's attention.

the factors that a court is to consider in granting or denying a trial continuance are "such things as the amount of time needed for effective preparation, the amount of time actually available for preparation, the amount of time previously available for preparation and how assiduously the movant used that time, the extent to which the movant has contributed to his perceived predicament, the complexity of the case, the availability of assistance from other sources, the probable utility of a continuance, the extent of inconvenience to others (such as the court, the witnesses, and the opposing party) should a continuance ensue, and the likelihood of injustice or unfair prejudice attributable to the denial of a continuance." *Id.* The preferences of counsel should be taken into account, but are not controlling. "Time is a lawyer's stock in trade, and a thorough lawyer almost always can find ways in which to put additional time to productive use. The test, however, is not counsel's subjective satisfaction with his level of preparedness. It is the province of the district court to manage its docket, and, within that province, to decide what constitutes a reasonable period of time for preparation." *United States v. Ottens,* 74 F.3d 357, 359 (1st Cir.1996) (internal citations omitted).

■ Here, rather than simply set a date, and then attempt to back into the completion of discovery, I think the wisest course is to rely not only on counsels' arguments, but also on the court's own experience and its grasp of the record. The goal is to determine a task-oriented schedule that is, on the one hand, fair to defendant in giving his counsel adequate time to prepare for trial and, on the other hand, fair to the government, the public, and the families of the alleged victims, by not unnecessarily delaying a case that they

desire be resolved as openly and expeditiously as possible.

To bring this case to a fair conclusion, the following issues remain for this court to address.

(1) To resolve any outstanding motions requiring the production of relevant, but hitherto unrequested, discovery.

These fall into two categories. The first is in the form of a motion filed on November 2, 2012 (with exhibits filed under seal on November 5, 2012), which seeks the production, among other things, of correspondence and other documents that might corroborate defendant's assertion that Jeremiah O'Sullivan, in his capacity as the head of the New England Organized Crime Strike Force, bestowed immunity on defendant for any crimes that he had then or might in the future commit. The sub-parts of this request are numerous, although it would appear that much of what is requested has already been produced. Nonetheless, I am unable to act on the motion until the government in due course files a response. Depending on that response, the court believes that the issues raised by this motion can be resolved within ninety days. The second category consists of motions that were filed with Chief Judge Wolf and Judge Tauro on October 31, 2012. They seek production of the sealed documents (which are extensive) in the *Salemme* and *Connolly* cases. Chief Judge Wolf issued an order on November 6, 2012, putting in place a procedure for determining which of these documents he will unseal or order to be produced. Judge Tauro issued a similar order on November 8, 2012. This judge does not have the power to direct other judges of the court to act on pending matters, but is aware that both Chief Judge Wolf and Judge Tauro are sensitive to the need to expeditiously resolve the issue.[9]

9. On October 11, 2012, defendant's counsel's office requested the production of seventy sealed documents in the related cases prose-

cuted in this session. Although far fewer in number than those in the *Salemme* and *Con-*

(2) To permit counsel to satisfy himself that he has obtained all relevant civil trial exhibits.

The government states, and there is no reason to believe otherwise, that it does not have possession of these exhibits. On October 5, 2012, Magistrate Judge Bowler denied without prejudice, pending a showing of due diligence, a motion filed by defendant on September 27, 2012, seeking an order requiring counsel representing plaintiffs in six civil trials (*Davis, McIntyre, Castucci, Donahue, Halloran,* and *Limone,* all against the United States), to produce "all trial exhibits" in their possession. The motion was renewed on October 31, 2012, before this court, together with an affidavit explaining that on October 11, 2012, Attorney Carney had sent letters to trial counsel requesting the exhibits. To date, two counsel have provided exhibits, "individuals associated with the *Donahue* and *McIntyre* cases have responded that they have no 'access' to the files, while others have not responded to the request." The court will, by separate order, direct the nonresponding counsel to produce the exhibits within a reasonable period of time,

or to state any objections to doing so. To the extent objections are based on the costs of duplication, the court is prepared to allow a motion for funds to pay for such costs (as it has already done in allowing the motion filed by defendant on October 31, 2012, to defray the costs of duplicating those civil trial exhibits that have been produced).[10] The court anticipates that this matter can be fully resolved within the next sixty days.

(3) To resolve disputes over materials designated under the existing Protective Order.

The court will, by separate order, direct defendant's counsel to comply with the procedure put in place by Magistrate Judge Bowler in her order of July 17, 2012, 283 F.R.D. 46 (D.Mass.2012) [Dkt # 696] for interposing objections to the designation of protected material.[11] Where disputes cannot be resolved informally with the government, the court will (with the assistance of Magistrate Judge Bowler) review the material in camera. As potentially 244,000 pages of material designated as protected may be involved, the court anticipates that it will take 120 days to complete this review.[12]

---

*nolly* cases, it took the court's Chief Law Clerk and the Sealed Docket Clerk a full two weeks—until October 25, 2012—to locate each of the documents, scan them onto a CD, and obtain the court's permission for their release to counsel. A similar (and more extensive) process will be required before rulings can be made by Chief Judge Wolf and Judge Tauro in the *Salemme* and *Connolly* cases.

10. A less confrontational alternative, as Magistrate Judge Bowler suggested at the October 5, 2012 status conference, would be for counsel to simply obtain and compare the daily exhibit lists filed by the Courtroom Deputies in the respective trials with the deposition exhibits provided by the government. As Magistrate Judge Bowler pointed out, defendant's counsel would likely find that most of what he seeks is already in his possession.

11. On July 17, 2012, in addressing the production of documents covered under the Protective Order issued in this case, Magistrate Judge Bowler directed the defense to review the 244,000 pages designated by the government as protected (identified within seven topical categories by a particular Bates stamp number) and present any page to the court for review if counsel believed that its continued protective status was objectionable. It is unclear why counsel has not to this point complied with Magistrate Judge Bowler's Order.

12. If, on the other hand (as defendant's counsel represents is the case), many of these pages consist of published books, newspaper articles, and duplicative material disclosed elsewhere, the task would be greatly simplified in a rethinking by the government of the necessity of throwing a veil of secrecy over material that is already in the public domain.

(4) To prepare for an efficient and appropriate voir dire of the jury panel.

The court has met with the Jury Clerk to discuss the logistics of what, given the notoriety of the case, is likely to be an extended empanelment. The court envisions a two-phase voir dire, the first consisting of a general orientation to the case and the completion by prospective jurors of a short-form questionnaire similar to the one prepared for use by the court in the trial of Stephen Flemmi. The questionnaire is not intended as a substitute for voir dire but as a mechanism to facilitate the screening by the court and counsel of potential jurors for whom reasons for an excusal or challenge for cause are apparent.

(5) Motions in limine.

Based on the tasks remaining (as outlined above), the court anticipates that all outstanding discovery matters will be resolved by April of 2013. At the hearing held on November 1, 2012, defendant's counsel stated that defendant will not file case-dispositive motions, but only motions in limine regarding evidentiary issues that might arise at trial.[13] The court hereby orders that any such motions be filed by defendant or the government on or before May 3, 2013.

(The government, to its credit, has already removed the protected designation from some 110,00 pages of previously sealed documents).

13. In its motion, the government contends that the issue of immunity raised by defendant is one of law to be ultimately decided by the court and not the jury. The court agrees with the government on the general proposition. As is often the case in the immunity context, however, the issue raised by the defendant is not one of pure law, but a question of mixed law and fact that requires certain factual findings by the jury as a predicate to the court's ruling. *See United States v. Doe,* 63 F.3d 121, 126 (2d Cir.1995) ("A defendant is not enti-

## ORDER

For the foregoing reasons, the trial of this case will be continued to insure fairness to all parties concerned. Consistent with the schedule set out in this opinion, trial will commence with a screening of prospective jurors at 10:00 a.m., Thursday June 6, 2013. Final selection of the jury, followed by opening statements of counsel, will be scheduled to commence at 9:00 a.m., Monday, June 10, 2013, in a courtroom to be determined.

SO ORDERED.

tled to raise in a pretrial motion the question whether the government breached an agreement with him if the agreement provides a defense to liability for the crimes charged in the indictment; resolution of that question requires trial of the general issue and is not properly decided in a pretrial motion."); *cf. St. Hilaire v. City of Laconia,* 71 F.3d 20, 24 n. 1 (1st Cir.1995) (concluding that where material facts are disputed, the district court should determine the legal question of whether the defendant is entitled to qualified immunity on the facts as found by the jury). The court will, at the appropriate time, set a schedule for the briefing of the purely legal issues involved.